[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff and the defendant in this matter were married on September 2, 1967 at Fort Pierce, Florida. We therefore have a marriage that has lasted approximately 26 years though the parties have been separated for a little over two years. The plaintiff has resided continuously in the State of Connecticut for at least one year next before the date of the filing of the complaint. The court finds further that there is one minor child issue of the marriage, Damond L. Dampier, born June 3, 1977. The court will further find that based upon all the testimony that the marriage of the parties has broken down irretrievably and that there is no hope of a reconciliation.
The plaintiff is a well educated man holding an MBA from the University of Hartford and a Bachelor of Arts and Associate Degree. He has worked for the last 25 years for United Technology and held a rather responsible job with the Corporation in the Human Resources Department. Unfortunately, due to the cutbacks in personnel, which are rather common in the last two or three years, in some of the major industrial and insurance businesses in the Greater Hartford Area, the plaintiff has been terminated with UTC. As part of his severance package he received both vacation pay, his normal pay through December 13 or 15 of 1993 and severance pay. The severance pay and vacation pay totaled slightly over $10,000.00 and he does have a gross weekly income of $1,120.15, to December 15, 1993. There CT Page 6890 is a question of whether or not the plaintiff is eligible for Unemployment Compensation at the present time, or whether he has to wait until his final termination payment is received in December 1993. His weekly unemployment compensation would be in the neighborhood of $390.00 per week. However, since he is not currently receiving said compensation and since there was no testimony as to his immediate eligibility, the court will not consider it at the present time, for the purposes of this division of assets. If the defendant discovers he is presently eligible, she may file for a modification of any alimony awards arising from this decision.
The defendant wife is employed at Arthur Anderson and Company and earns a respectable salary of $35,000.00 a year. She has worked at Arthur Anderson the past four years and had a rather varied employment history prior to that, not staying on prior jobs more than two or three years at a time.
The plaintiff claims the marriage started to deteriorate around 1981-1382 at which time they were negotiating to buy their current home in Manchester, Connecticut. Prior to that, they had lived in Southington, Connecticut in their home and prior to that had rented. The plaintiff's claim is that about that time in the early 1980's the defendant became very aloof and distant and cold towards him and that it really broke down the marriage.
The defendant claims that problems in the marriage started sometime in the late 1980's when the plaintiff went south to a high school reunion in 1985. The defendant alleges that at that time he met a former classmate whom he had dated in high school and resumed a long distance relationship with this woman.
Actually, there was more working against this marriage than either of these parties seem to realize. The plaintiff was very conservative fiscally and wanted the wife to help in making the household payments, such as the mortgage, groceries and utilities, and so forth. The plaintiff painted his wife as a spendthrift who spent all her money on herself and the children and contributed little to the household. The defendant in fact alleged the opposite, that she contributed a lot more to the household than the plaintiff gave her credit for contributing, such as clothing for the children, furniture and appliances for the home and a number of major expenses that she paid. She also claimed that he was opposed to her working though he wanted her CT Page 6891 to go to work so they could afford the house in Manchester and she could help with the mortgage. Other than that he was opposed to her working and wanted her to stay at home and take care of the children. It is difficult to decide which of these two parties is painting a more accurate picture since both have tried to put themselves in the best light possible, but one would realize that this marriage was in trouble as all the way through the testimony the parties talked about their own bills, their money, or my money, my bills, this is what I was supposed to take care of, this is what the other party was supposed to take care of. They never seemed to run their financial affairs on a family or group basis and it is this type of thinking, plus the combination of the differences in their spending habits, that probably had more to do with the breakdown than the alleged affair with a former high school classmate or the cold and distant relationship alleged by the plaintiff. Part of their fiscal problem could be seen in the fact that they were continually refinancing this house, almost on a semi-annual basis, just for the purpose of paying property taxes. They never seemed to save money to take care of those bills that were really the most important. Instead, they spent money on BMW's and Nissan Maxima's which were both cars that are in the more expensive or lower luxury class.
The plaintiff indicated that he feels the job opportunities in this area are very much depressed, and he is probably right, if current business reports and projections are correct. He has been looking for work in the southeastern part of the country where he feels the economy is better and there is more opportunity for employment. But one suspects that he might also be motivated by his new friend who comes from Georgia or the southeastern part of the country. In any event, his salary will continue until December 15, 1993 and all orders will be based upon the current income.
The court, based upon its earlier findings, finds that the marriage has broken down irretrievably. There is one minor child issue of the marriage and there is a dispute as to custody since the plaintiff wants joint custody but is thinking seriously of relocating from this area. The court feels that joint custody might not be the most feasible was to go currently, keeping in mind the plaintiff's intentions and inability to be present when major decisions must be made regarding the child's welfare. Therefore, the court will grant sole custody to the defendant wife with liberal rights of visitation in the CT Page 6892 plaintiff. It is the hope of the court that the parties will be able to work out visitation between themselves especially if the plaintiff relocates to the southeastern part of the country. In the event they cannot agree on visitation, the court will unfortunately have to intercede at a later date. The court will further order child support again based upon the current incomes of the parties at $210.00 per week which falls within the guidelines as presently promulgated. The court will further order alimony in the amount of $100.00 per week for the next ten years keeping in mind that the plaintiff's salary terminates on December 15, 1993. If he has relocated to the south and his income is commensurate with his past income at UTC the court would suggest that the alimony remain at the same amount. However, if he does not secure employment by that date, the plaintiff should make an immediate motion to modify. Alimony will be non-modifiable as to time but modifiable as to amount based upon the parties economic circumstances at the time of this and any future hearing and also based upon defendant's ability to earn a decent wage as evidenced by her current employment. The plaintiff will provide health insurance as available through his place of employment at least until December 15, 1993, and if he is then unemployed, the wife will have to supply the health insurance as available through her place of employment. In any event, the parties will share 50/50 in any unreimbursed medical or health and dental related expenses. If the plaintiff secures employment prior to December 15, 1993, and has a health insurance package available through his new place of employment, he will be ordered to maintain the health insurance for the benefit of the minor child. The plaintiff husband will further be ordered to maintain his current life insurance as available through his employment until such time as December 15, 1993. Again, if he secures reemployment prior to that date, then he will continue whatever life insurance is available through his new place of employment.
As long as the plaintiff is paying child support in excess of 50% of the actual cost of maintenance of the child, then and in that event he shall have the federal tax exemption for his federal income tax purposes and also for state income tax purposes, if still in the State of Connecticut or any other state with personal Income Tax. Using the financial statements of the parties, the court finds that the plaintiff listed $98,108.00 in assets. He did not list his severance pay which was $6,106.50 and his vacation pay which was $3,896.00. Adding to the $98,108.00 gave him total assets of $108,110.50. The CT Page 6893 defendant's assets as listed on her affidavit, including the equity in the house, showed her with assets of $75,434.00. The difference between the assets of the plaintiff and the defendant are $33,376.00.
The plaintiff shall be entitled to the return of his tools, (other than outdoor tools such as rakes, hoes, spades, lawn mower, snow blower, etc., which are needed for usual maintenance of the home) and other equipment in the garage not covered by the aforementioned exceptions.
Each party shall remain liable for their debts shown on their respective financial affidavits except each shall share equally in the bills labeled "Accountant" and "Summer Camp".
It is the order of the court that in order to equalize the division of assets, including both real property and personal property, that the plaintiff pay to the defendant $16,688.00. Each party shall remain liable for their own debts as shown on their respective financial affidavits. The payment of $16,688.00 should be made payable within one year of the date of this memorandum. In the event that the plaintiff cannot pay said $16,688.00, said sum shall be secured by a lien on his United Technology Corporation Pension. Since both parties have some source of income as of this point and since the defendant's chances of continued employment at this particular point in time seem more secure than that of the plaintiff, the court will not award counsel fees to either party.
Accordingly, the marriage is dissolved in accordance with the above stated orders.
Kline, State Trial Referee